## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DIANE S. BINGHAM,                                    Case No. 1:20-cv-636

       Plaintiff,                                   Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

### MEMORANDUM OPINION AND ORDER

Plaintiff Diane Bingham filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.  The Commissioner's finding of non-disability will be AFFIRMED because it is supported by substantial evidence in the record as a whole.[1]

### I.  Summary of Administrative Record

On April 6, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging she became disabled on March 21, 2017 based upon a combination of plantar fasciitis, osteoarthritis in her hand, knee and ankle, depression, anxiety, high cholesterol, problems with her feet, and chronic pain disorder.  (Tr. 223)   After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  At a hearing held on June 18, 2019, Plaintiff

---

[1]The parties have consented to the jurisdiction of the undersigned magistrate judge.  *See* 28 U.S.C. §636(c).

appeared with counsel and gave testimony before ALJ Thuy-Anh T. Nguyen; a vocational expert ("VE") also testified.   On August 28, 2019, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled.  (Tr. 10-27).  The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner.  Plaintiff then filed this judicial appeal.

Plaintiff was 42 years old on her original alleged disability onset date, and remained in the same "younger individual" age category on the date of the ALJ's decision. She has a high school education, and previously worked as a bartender, a waitress, and briefly as a bank teller.  She testified that she lives with her husband and two children, who were 11 and 20 years old at the time of the hearing.

The ALJ determined that Plaintiff has severe impairments of "degenerative disc disease; mild osteoarthritis of hands; vertigo; major depressive disorder; anxiety disorder; panic disorder; and posttraumatic stress disorder (PTSD)."  (Tr. 12).  The ALJ found Plaintiff's hyperlipidemia to be a non-severe impairment.  (*Id.*)  Although Plaintiff had suggested that she had a diagnosis of fibromyalgia, the ALJ found that condition to be a "nonmedically determinable impairment" because Plaintiff did not offer evidence demonstrating the criteria for fibromyalgia, and physical findings demonstrated pathology consistent with osteoarthritis pain and unspecified arthropathies. (Tr. 13).  Considering Plaintiff's impairments alone and in combination, the ALJ found that none met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.  (*Id.*)

Plaintiff does not challenge any of the foregoing findings in this judicial appeal. However, she does challenge the ALJ's assessment of her residual functional capacity

("RFC").  The ALJ determined that she could perform sedentary work, subject to the following limitations:

> She can frequently operate foot controls with her right lower extremity; she can occasionally balance, kneel, stoop, crouch, crawl, or climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she must avoid all exposure to unprotected heights and uneven terrain; she can frequently handle and finger with the bilateral upper extremities; she can frequently reach overhead with the right upper extremity; and she can occasionally reach overhead with the left upper extremity. She can understand, remember, and carry out simple, routine instructions and detailed instructions. She can work in an environment without strict production standards. She can interact occasionally with the public, coworkers, and supervisors. She can adapt to work environments with only occasional changes.

(Tr. 15).

Based upon this RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform her prior work but still could perform other jobs that exist in significant numbers in the national economy, including document preparer, assembler, and inspector.  (Tr. 26). Therefore, the ALJ determined that Plaintiff was not under a disability.  (Tr. 27).  Plaintiff urges this Court to reverse, arguing that ALJ erred when she failed to properly evaluate two medical opinions: (1) the opinion of a consulting examining psychologist, and (2) the physical RFC opinions of a treating nurse practitioner.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....  The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant

can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### B.   Plaintiff's Claims of Error

#### 1.  Evaluation of Mental RFC Opinion Evidence

Plaintiff first argues that the ALJ's mental RFC limitations are unsupported because the ALJ failed to properly evaluate the psychological report of examining consultant, Jessica Twehues, Psy.D.  Reviewing Dr. Twehues's report and the ALJ's analysis thereof, the undersigned finds no error.

Dr. Twehues examined Plaintiff on July 19, 2017.  Plaintiff reported that she was seeking disability primarily based on physical complaints,[2] and had never participated in any mental health treatment other than medications prescribed by her primary care provider including Cymbalta for anxiety.  (Tr. 20, citing Tr. at 375-376)   During the interview, Plaintiff reported spending most of her time watching television.  She does housework, but stated her chores take her a long time due to pain.  (Tr. 377).  She reported close relationships with her neighbor and family members including her husband, children and sister-in-law, as well as "some contact with [former] coworkers."

---

[2]In addition to the clinical interview, Dr. Twehues reviewed a report of contact dated June 21, 2017, in which Plaintiff also focused on physical health problems as well as problems with sleep and stress.  (Tr. 375).

(*Id*.; *see also* Tr. 20).  She subjectively reported that she "used to enjoy shopping and painting nails" but no longer does.  (*Id*.)

In her clinical observations, Dr. Twehues noted that Plaintiff cried when speaking about the recent loss of her mother and her physical pain and appeared "depressed," but that "[h]er affect seemed appropriate to content discussed."  She maintained good eye contact and had "fair" energy.  (Tr. 20, citing Tr. 378).  Her speech was "clear and 100% understandable," and "of normal rate and tone," with the content "adequately organized and easily followed," and appearing "logical, coherent, and goal-directed." (Tr. 377-78).  Plaintiff was "well groomed" and was "pleasant and cooperative" despite a "tense" posture that included "trembling at times." (*Id*.)

Functionally, Dr. Twehues offered opinions consistent with moderate limitations, and "did not refer to deficits suggestive of the need for marked or extreme limitations" in *any* broad functional area, such as the ability to understand, remember or apply information, interacting with others, maintaining concentration, persistence or pace, and adapting or managing herself.  (Tr. 14).  In lieu of more specific RFC limitations, Dr. Twehues couched her opinions in relative terms, using a variety of qualifying terms and phrases.  For example, Dr. Twehues opined that Plaintiff would be expected to experience "mild to moderate forgetfulness with regard to *complex, multi-step tasks* due to *some* problems with concentration related to depression and anxiety," (Tr. 379, emphasis added), but offered no similar opinion relative to simple tasks.  Dr. Twehues opined that Plaintiff would have "at least moderate difficulty sustaining focus for *prolonged periods* of time," but did not opine on the ability to sustain focus for short periods.  She offered that Plaintiff would "appear *prone to some* higher than usual rates of absenteeism from work due to panic attacks, depression, and agoraphobia," (*id*., emphasis added), but offered

6

no specific number of days. She further suggested that Plaintiff "is *likely* to present as hypersensitive to criticism and *appears prone* to panic attacks and crying spells in response to critical feedback," and that she is "expected to withdraw from others due to her experience of depression and anxiety." (Tr. 379-80, emphasis added)). Based upon Plaintiff's report that she is easily overwhelmed with stress as well as her clinical presentation, Dr. Twehues suggested that she "appears prone" to increased "anxiety, depression, and panic attacks *in response to high stress*," (with no opinion on low stress), and would have "[m]oderate to potentially severe limitations" in responding to work pressures. (Tr. 380, emphasis added).

Plaintiff argues that the ALJ should have translated Dr. Twehues's opinions into the following work-preclusive RFC limitations across <u>all</u> job situations: (1) Plaintiff is "<u>unable</u> to respond appropriately to supervisors"; (2) Plaintiff "<u>could not accept</u> critical feedback or a criticism," and would likely break down in tears and be unable to complete work tasks; and (3) Plaintiff "would miss two or more days of work per month." (*See* Doc. 11 at 19, emphasis added). Plaintiff's counsel asked the vocational expert whether Plaintiff could work if she "couldn't accept critical feedback or a criticism, and… would likely break down in tears and then be unable to complete [her] tasks." (Tr. 65). The VE responded that if that was "a *consistent* behavior following criticism or feedback from a supervisor, that *eventually* would result in the termination of employment." (Tr. 65, emphasis added).

The Court finds no error in the ALJ's analysis of Dr. Twehues's opinions. First, the functional limitations proposed by Plaintiff are much more extreme than the carefully qualified limitations suggested by Dr. Twehues. A complete inability to respond to supervisors or to accept critical feedback in all situations suggests a level of "marked" or

"extreme" limitation in the ability to adapt and in interacting with others, as opposed to the "moderate" level of limitation suggested by Dr. Twehues. (*See* Tr. 14). Similarly, being "likely" to exhibit hypersensitivity without any quantification of the frequency of panic attacks and crying spells differs from being *completely unable* to respond to supervisors.

Rather than adopting work-preclusive limitations, the ALJ translated Dr. Twehues's concerns into a mental RFC that limited Plaintiff "to simple, routine and detailed tasks in a reduced stress environment with limited social interaction." (Tr. 25). The VE then testified that Plaintiff could still work "in a low stress environment, which is defined as one with occasional decision making." (Tr. 63). In addition, the representative positions on which the ALJ relied all have the least possible amount of interactions with other people, with no express coworker interaction and no other interpersonal interaction except for minimal interaction required with supervisors. *See* DOT, Appendix B, 1991 WL 688701*; see also Finley v. Colvin*, 2015 WL 5162476 at *5 (M.D. La Aug. 12, 2015), R&R adopted at 2015 WL 5162396 (M.D. La. Sept. 1, 2015). None of the jobs require interaction with the general public. (Tr. 63). *See also Connor v. Colvin*, 2014 WL 3533466 at *4 (D. Me. July 16, 2014) (construing DOT rating "8" as "consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors").

Given that Dr. Twehues did not articulate the specific mental RFC limitations that Plaintiff now proposes, all that is left is to consider whether the mental RFC as determined is substantially supported. It is. The Court finds no evidence that the low-stress, socially isolated jobs on which the ALJ relied would subject Plaintiff to such regular criticism, or result in such "consistent" crying and panic attacks with supervisors that Plaintiff could not maintain her employment.

In any event, the ALJ reasoned that Dr. Twehues's report was only "partially persuasive," due to her many "generally benign observations" throughout the clinical interview, (*see* above and discussion at Tr. 20). Indeed, most of Dr. Twehues's clinical observations regarding mental content, sensorium and cognitive functioning, insight and judgment were unremarkable, reflecting normal findings and average intelligence. (Tr. 20, discussing Tr. 377-78 wherein Dr. Twehues observes that Plaintiff "seemed alert, responsive, and oriented," and "appeared able to focus well in conversation," with "insight into her mood state" and "judgment…sufficient …to make decisions…."). In addition, the ALJ pointed out that Plaintiff reported in November 2018 that she had injured her eye while doing acrylic nails, which "suggests some degree of improved daily activities" in the months following her report to Dr. Twehues that she no longer enjoyed doing her nails. (Tr. 18).

Despite the ALJ's clear statement that Dr. Twehues was only "partially persuasive," Plaintiff complains that the ALJ should have done a better job of articulating the basis for that statement, particularly in describing the factors of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(c) and 404.1520c(b)(2). Plaintiff also asserts that the ALJ "failed to mention any of the probative evidence." (Doc. 11 at 18). But Plaintiff appears to have overlooked the ALJ's express discussion of the "probative evidence" cited by Plaintiff herein.[3] In addition, the ALJ cited to other substantial evidence to explain why portions of Dr. Twehues's opinions were unsupported and lacked consistency, including but not

---

[3]Virtually all of the "probative evidence" cited by Plaintiff was specifically mentioned by the ALJ, including the February 2017 records of Dr. Danko, (*see* Tr. 16), the records of Dr. Haas (Tr. 17), and the treatment by CNP Jandes for depression and anxiety (Tr. 19).

limited to inconsistencies between Plaintiff's subjective statements and the psychologist's objective clinical observations.

Plaintiff also contends that the ALJ's citations to other evidence were overly selective.  However, with the limited exception of NP Egbert's opinions, discussed below, the handful of records cited by Plaintiff merely support her twin diagnoses of depression and anxiety – not that those impairments cause a *disabling* level of symptoms.  In addition, the ALJ discussed the evidence in the record as a whole, including her very "conservative" mental health treatment, and records from other sources that also included  "relatively benign findings"

> especially when not exposed to significant stressors and compliant with treatment recommendations. Further, mental health treatment has consisted essentially of routine pharmacologic management and a brief period of outpatient therapy coinciding with the loss of her parents. She has not required inpatient psychiatric treatment or emergency/crisis treatment.
>
> The undersigned finds that limiting the claimant to the above-describe range of simple, routine and detailed tasks in a reduced stress environment with limited social interaction sufficiently accommodates the claimant's mental issues.

(Tr. 23).  In other words, the ALJ found Dr. Twehues's report to be supportable and consistent with the record insofar as Dr. Twehues diagnosed depression and anxiety, and assessed moderate levels of functional limitations that the ALJ translated into the RFC as determined.  However, the ALJ reasonably determined that the record did not support translating Dr. Twehues's "vague" statements, (Tr. 25), into more extreme and work-preclusive functional limitations.

Plaintiff's additional criticisms of the ALJ's analysis of Dr. Twehues's opinions are equally unpersuasive.  For example, she accuses the ALJ of "play[ing] doctor" when the ALJ observed that "the majority of Dr. Twehues's concerns are based on subjective reporting made by the claimant and at a time when the claimant was receiving minimal

mental health care and experiencing grief related to the recent death of her mother." (Tr. 25). In context, that statement evinces no error.[4] An ALJ oversteps her role when interpreting raw medical data such as lab reports, without the benefit of any medical opinions. *See, e.g., Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (citing *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985)). In other cases, courts have levied the charge of "playing doctor" when ALJs have completely disregarded the treating physician rule or similar regulations (none of which apply to this case), and adopted an RFC that was wholly unsupported by the record.

Here, the ALJ stayed within her appropriate role. "When considering the medical evidence and calculating the RFC, an 'ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions.'" *Toohey v. Com'r of Soc. Sec*., 2021 WL 940288, at *7 (S.D. Ohio 2021). The ALJ explained her reasons for discounting Plaintiff's subjective statements, including those made to Dr. Twehues, and expressly relied upon the November 2017 opinion of an agency reviewing psychologist, Dr. Rivera, who opined that Plaintiff's "emotional distress is not pathological as it is the direct result of a personal loss," alluding to the recent death of both parents. (Tr. 96); *contrast id*., citing *Simpson v. Com'r of Soc. Sec*., 344 Fed. Appx. 181, 194 (6th Cir. 2009) (reversing where the ALJ substituted doctor's medical opinion with his own, rather than relying upon "her testimony as to her daily activities or another doctor's testimony as to her condition.").

---

[4]The record reflects that Plaintiff's mother died in January 2017, (Tr. 462), approximately six months before Dr. Twehues examined her, and Dr. Twehues observed that Plaintiff's tears were "appropriate" when she spoke of her mother's death. Plaintiff's father passed away in August 2017, following a terminal illness. (*See* Tr. 385; Tr. 506, 8/29/17 note that "Patient's Dad just passed away.").

Consistent with the ALJ's mental RFC determination, Dr. Rivera found no more than moderate limitations:

> Essentially, Dr. Rivera opined that the claimant retains the mental ability to perform simple and detailed instructions in a reduced stress environment with some social limitations. Dr. Rivera observed that much of the claimant's mental complaints were related to grief stemming from the death of her parents and that emotional distress stemming from her recent losses were not due to an underlying disorder. The undersigned largely agrees with this assessment and has incorporated Dr. Rivera's conclusions, although the residual function capacity at Finding #5 does differ somewhat in an effort to use more vocationally relevant terms.

(Tr. 24, citing Tr. 91, 96; *see also* Tr. 14 ("[T]he evidence of record does not support the intensity or frequency of her reported symptoms.")).

The cases cited by Plaintiff are easily distinguished, as they reflect a disregard of regulations that do not apply to this case, and/or more significant objective evidence in the plaintiff's favor. *See*, *e.g.*, *Dameron v. Com'r of Soc. Sec.*, 2018 WL 2440690 at *4 (S.D. Ohio Apr. 18, 2018) (reversing because the ALJ ignored a regulation that required greater weight to be given to the examining consultant, and erroneously assumed that consultant's opinions were "supported only by an uncritical acceptance of Plaintiff's subjective complaints" despite the inclusion of numerous objective observations); *accord Peters v. Com'r of Soc. Sec.*, 2021 WL 615234 at *5 (S.D. Ohio Feb. 17, 2021) (finding the ALJ failed to articulate any reason at all for giving "great weight" to a non-examining reviewer and rejected a well-supported opinion then entitled to "controlling weight").

### 2.  Evaluation of Physical RFC Opinion Evidence

Plaintiff's second claim is that the ALJ erred when she evaluated her physical RFC, because she did not give sufficient weight to the opinion of Nurse Practitioner Egbert. Again, the Court finds no reversible error.

NP Egbert worked in the office of Plaintiff's pain management specialist, Dr. Danko. On May 24, 2017, NP Egbert completed a form on which she offered a multitude of opinions including that Plaintiff could walk for only one half to one city block, sit for eight hours, stand/walk for one or two hours, need to take unscheduled breaks every one to two hours for five to ten minutes, occasionally lift/carry up to ten pounds, never lift/carry twenty pounds or more, use her hands for grasping, turning, twisting objects thirty percent of a workday; and use her fingers for fine manipulation thirty percent of the work day. (Tr. 372). She further opined that Plaintiff's symptoms would frequently interfere with the attention and concentration required for simple work-related tasks. (Tr. 372). She stated that Plaintiff would need to recline or lie down during a typical workday in excess of typical breaks, and that Plaintiff would be likely to miss more than four days per month. (Tr. 372-373).

The ALJ found NP Egbert's opinions to be only "minimally persuasive" except to the extent consistent with the sedentary RFC as determined. (Tr. 25). Rather than finding Plaintiff wholly unable to use her right foot or precluded from all work due to pain as suggested by NP Egbert, the ALJ included no more than "frequent" operation of "foot controls with her right lower extremity." (Tr. 15). In lieu of the extreme hand and fingering limitations suggested by NP Egbert, the ALJ found she "can frequently handle and finger with the bilateral upper extremities; she can frequently reach overhead with the right upper extremity; and she can occasionally reach overhead with the left upper extremity." (*Id.*) To accommodate other physical impairments including pain, the ALJ limited Plaintiff to only "occasional" balancing, kneeling, stooping, crouching, crawling or climbing of ramps and stairs, with no ability to climb ladders, ropes, or scaffolds, and no exposure to unprotected heights or uneven terrain. (*Id.*)

13

Plaintiff criticizes the ALJ's rejection of NP Egbert's opinions as "conclusory." (Doc. 11 at 20).  But it is NP Egbert's opinions that were conclusory.  As the ALJ pointed out, NP Egbert "did not provide <u>any</u> objective support for her recommendations," (Tr. 25, emphasis added), and instead listed only Plaintiff's diagnoses and Plaintiff's subjective complaints about medication side effects. (Tr. 372).    Pursuant to 20 C.F.R. § 404.1520(c)(1), medical opinions must be supported by "objective evidence." *See also*, *generally*, *Toll v. Com'r of Soc. Sec.*, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) (holding that when an opinion lacked any explanation "of how Plaintiff's diagnoses impose these severe restrictions on his ability to perform work," any error in the failure to provide "good reasons" for assigning less than controlling weight to the opinion was harmless error).

In her reply memorandum, Plaintiff baldly asserts that NP Egbert's opinion is supported by "her treatment notes and other medical evidence." (Doc. 15 at 3).  However, this Court finds no treatment notes that would support NP Egbert's opinions.   To the contrary, NP Egbert's records include an express notation that Plaintiff did not experience "side effects from [her] current treatment," (Tr. 361), and her objective physical examination was normal.  (Tr. 363).

Plaintiff does cite to three records from other providers to support NP Egbert's opinions.  None of those records, however, support the level of limitation endorsed by NP Egbert.[5]  For example, in one records, dated April 6, 2016, Dr. Cooper found only "mild pain" and "mild edema" in Plaintiff's right foot.  (Tr. 282).  Two additional records relate to Plaintiff's back pain: a May 27, 2016 x-ray and a November 2018 clinical record.  The x-

---

[5]Plaintiff offers no explanation or analysis of how she believes the cited records support the extreme limitations offered by NP Egbert.

ray shows degenerative disc space narrowing with some sclerosis and hypertrophic spurring centered at C5-C6.[6] (Tr. 307).   The record dated November 26, 2018 notes muscle spasms in Plaintiff's cervical, thoracic and shoulder regions and decreased ROM in all three areas. (Tr. 425-26).  While both records lend support for *some* back, shoulder and neck pain, they do not facially support the extreme limitations cited by NP Egbert.

In contrast to the modestly supportive records cited by Plaintiff, the ALJ extensively discussed other substantial evidence of record (including Plaintiff's testimony) that supported her less-than-disabling physical RFC findings attributable to Plaintiff's chronic back, shoulder and neck pain.  At this juncture, it is worth noting that Plaintiff does not <u>directly</u> challenge the ALJ's negative assessment of her subjective pain complaints, although her claim of error concerning the ALJ's failure to adopt NP Egbert's extreme RFC opinions indirectly touches upon that assessment.

To the extent that Plaintiff relies upon her subjective complaints to support the physical RFC opinions of NP Egbert, her claim is unpersuasive.   Judicial deference is particularly important in evaluating subjective complaints.   The assessment of such symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).   Under SSR 16-3p, an ALJ is to

---

[6]An ALJ is not required to explicitly discuss "every single piece of evidence submitted by a party." *Kornecky v. Com'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir. 206) (quoting *Loral Defense Systems–Akron v. N.L.R.B.,* 200 F.3d 326, 453 (6th Cir. 1999)) (additional citations and internal quotation marks omitted). The ALJ in this case generally cited to "underwhelming" imaging results "inconsistent with the need for total work preclusion" including "mild" osteoarthritis in Plaintiff's right knee, and only "some" degenerative change in the lumbar spine.  (Tr. 18).

15

consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms. *Id.*, 2017 WL 5180304, at \*7-8 (listing factors); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. However, SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at \*5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Therefore, it remains the province of the ALJ, and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally*, *Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). A credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ discounted Plaintiff's subjective complaints as "not entirely consistent with the medical evidence and other evidence of record…." (Tr. 22). A good deal of the ALJ's opinion discusses the ample evidence that supports her assessment of Plaintiff's subjective pain complaints. As stated by the ALJ, "[t]he pivotal question is not whether such symptoms [pain complaints] exist, but whether those symptoms occur with such frequency, duration, or severity as to… preclude all work activity on a regular and continuing basis." (*Id.*) On the record presented, the "objective medical evidence does not support the allegations regarding the severity of [Plaintiff's] subjective complaints," including, for example, the lack of any muscle atrophy, severe spasm, rigidity or tremor," and "relatively benign and unremarkable" physical findings throughout the record. (*Id.*). The ALJ noted in particular the lack of evidence "of substantial abnormalities at the extremities," the consistently "normal gait with no balance or stability issues," and imaging

that "has not demonstrated abnormalities that correlate with the extent of dysfunction alleged…." (*Id*.)  There was also no evidence of "electrodiagnostic testing confirming reports of radiculopathy or neuropathy," or any physical findings that would suggest "substantial neurologic deficits."  (*Id*.)

The ALJ further discussed the inconsistency of Plaintiff's allegations with her course of treatment, noting that while the treatment "certainly supports the need for work restrictions," it "is offset to a degree by consistently benign physical and objective findings," along with much of the treatment being "conservative in nature."  (Tr. 23). Finally, the ALJ noted that "despite describing very significant manipulative difficulty," Plaintiff "has not required any substantial treatment [for] her hands," and that the record also fails to document any "significant care for her feet."  (Tr. 23).  Plaintiff points to no misstatement of the record by the ALJ in regard to the objective evidence or in regard to her treatment regimen that would suggest any "compelling reason" to reverse the ALJ's evaluation of her subjective complaints.[7]

Again, the ALJ's evaluation of Plaintiff's subjective complaints is relevant to the extent that Plaintiff appears to rely upon those complaints to support the RFC opinions of NP Egbert.  Considering the extensive body of evidence cited by the ALJ, it is clear that the ALJ's rejection of NP Egbert's wholly unsupported opinions as well as the determination of Plaintiff's physical RFC (taking into account her subjective complaints) are substantially supported.  The ALJ cited to numerous objective findings throughout the record including Plaintiff's intact strength, sensation and reflexes in all extremities, a

---

[7]Plaintiff briefly attacks the ALJ's description of her medical regimen as "conservative," citing the number of pain medications she has tried, as well as her course of chiropractic treatment.  However, the ALJ considered all of that evidence within the context of the record as a whole. The Court concludes that the ALJ's analysis of Plaintiff's subjective pain complaints falls well within the "zone of choice."

normal gait, and no observed deficits along the entire spine. (Tr. 16, citing to Dr. Danko's February 2017 examination). The ALJ did not ignore evidence that supported some level of pain complaints, such as an MRI that showed degenerative changes, and clinical records that documented continued pain and related dysfunction at both her feet and hands over some period of months. However, the ALJ evaluated that evidence in the light of clinical records that reflected Plaintiff's reports in June, July and August of 2017 of "improved symptoms with her medication with no adverse effects," (Tr. 16-17), and numerous records that reflected "relatively unremarkable" physical findings. (Tr .17-18). Those findings included records from multiple providers that found normal range of motion and other benign findings, along with "stable" pain control and no signs of physical distress. (Tr. 18-19; *see also* Tr. 20, noting that "physical findings and imaging results have consistently been relatively unremarkable in nature.").

In this Court's view, the ALJ fairly considered the record as a whole, including the chronology of Plaintiff's treatment for back pain and the fact that initially, chiropractic treatment resulted in "relatively minimal improvement." (Tr. 19). The ALJ took note of December 2018 records indicating decreased ROM at the neck, but with no signs of tenderness, loss of strength, sensory deficits or diminished reflexes. Plaintiff began treating with a pain specialist, Dr. Alturi, the same month and continued to report that her pain medication improved her pain. (*Id.*) Although Dr. Atluri found tenderness along portions of Plaintiff's spine and shoulders, Dr. Atluri like other providers found no overt signs of distress, and no sensory deficits or loss of strength at the extremities. (*Id.*) Additionally, while injections and a later medial branch block were not particularly beneficial, Plaintiff reported in April 2019 that an earlier radiofrequency ablation had helped. While Dr. Atluri did not offer RFC opinions, the ALJ reasonably concluded that

18

his assessment of "mild systemic disease" "does not suggest a level of dysfunction warranting total work preclusion."  (Tr. 19; *see also id*., discussing January 2019 clinical records reflecting some loss of motion, pain and spasm at the neck, but "no other significant long-term issues.").

The ALJ also discussed Plaintiff's own testimony about her chronic pain and alleged dysfunction at her feet, knees, and hands, limited ROM at her neck and a loss of manipulative ability in her hands.  (Tr. 21.)  In addition to noting the inconsistency of those complaints with the objective and clinical records discussed, the ALJ discounted Plaintiff's testimony in part because Plaintiff "suggested a diagnosis of fibromyalgia, [but] the record does not establish this impairment."  (*Id*.)  And apart from the many records reflecting normal findings and Plaintiff's frequent reports to her providers that treatment was effective, Plaintiff testified at the hearing that her prescribed medication is "beneficial and allows her to perform many of her daily activities, albeit with the need for breaks."  (*Id*.)  In sum, the Court finds no error in the ALJ's rejection of the unsupported physical RFC opinions of NP Egbert, or in the ALJ's assessment of the record as a whole when formulating Plaintiff's physical RFC.

### III.  Conclusion and Recommendation

For the reasons stated, the ALJ's assessment of the medical opinion evidence and formulation of Plaintiff's RFC in this case are substantially supported.   A vocational expert's testimony will provide substantial evidence to affirm a nondisability finding so long as all relevant limitations are included in the description of the RFC conveyed in the hypothetical question posed to the VE.  *Howard v. Com'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir.2002).   The ALJ included all relevant limitations here.

Accordingly, **IT IS ORDERED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge